# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

BANK OF AMERICA, N.A., )
 )
                Plaintiff )    Case No.: 2:16-cv-00279-GMN-CWH
vs. )
 )    **ORDER**
KENNETH BERBERICH, *et al.*, )
 )
                Defendants. )
 )

Pending before the Court is Bank of America, N.A.'s ("Plaintiff's") Motion for Partial Summary Judgment, (ECF No. 60). Defendant Sunrise Highlands Community Association ("Sunrise") and Defendant Kenneth Berberich ("Berberich") filed Responses, (ECF Nos. 67, 74), and Plaintiff filed Replies, (ECF Nos. 72, 82). Further, Plaintiff filed a Supplemental Brief, (ECF No. 91), in support of its Motion for Partial Summary Judgment; and Berberich filed a Responsive Supplemental Brief, (ECF No. 94).

Also pending before the Court is Berberich's Motion for Summary Judgment, (ECF No. 62). Plaintiff filed a Response, (ECF No. 68), and Berberich filed a Reply, (ECF No. 78).[1]

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Partial Summary Judgment, (ECF No. 60). Additionally, the Court **DENIES** Berberich's Motion for Summary Judgment, (ECF No. 62).

# I.    BACKGROUND

This case arises from the non-judicial foreclosure on real property located at 2675 Upland Bluff Drive, Las Vegas, Nevada 89142 (the "Property"). (*See* Deed of Trust, Ex. A to

---

[1] Also pending before the Court is Sunrise's Motion for Summary Judgment, (ECF No. 61). Plaintiff and Sunrise reached a settlement on February 14, 2019; and then filed a Stipulation to Dismiss Sunrise with prejudice on March 27, 2019. (Min. Proceedings, ECF No. 89); (Stip., ECF No. 99). Accordingly, the Court denies Sunrise's Motion for Summary Judgment as moot.

Pl.'s Mot. Summ. J. ("MSJ"), ECF No. 60-1). In 2007, Marcee and Adam Thomson ("Borrowers") purchased the Property with a loan of $297,173.00, secured by a deed of trust (the "DOT"). *(Id.)*. Plaintiff gained beneficial interest in the DOT through an assignment recorded on October 6, 2011. (*See* Assignment, Ex. D. to Pl.'s MSJ, ECF No. 60-4).

Upon Borrowers' failure to stay current on their payment obligations, Alessi & Koenig, LLC ("A&K"), on behalf of Sunrise, initiated foreclosure proceedings by recording a notice of delinquent assessment lien and a subsequent notice of default and election to sell. (*See* Notice of Delinquent Assessment Lien, Ex. E to Pl.'s MSJ, ECF No. 60-5); (Notice of Default, Ex. F to Pl.'s MSJ, ECF No. 60-6).

On September 9, 2011, the law firm Miles, Bauer, Bergstrom & Winters LLP ("Miles Bauer"), on behalf of Plaintiff, sent a letter to A&K requesting a ledger that identifies the amount of Sunrise's superpriority lien on the Property, which A&K provided. (*See* Request for Accounting at 6–9, Ex. 1 to Miles Aff., ECF No. 60-8); (*see* Statement of Account, Ex. 3 to Miles Aff., ECF No. 60-8). Miles Bauer, on behalf of Plaintiff, subsequently delivered a check to A&K for $288.00, based on the provided ledger, as a payment for nine months' assessments. (*See* Tender Letter, Ex. 5 to Miles Aff., ECF No. 60-8).

Notwithstanding the alleged tender, A&K proceeded with the foreclosure by recording a notice of foreclosure sale and subsequently foreclosing on the Property. (*See* Notice of Trustee's Sale, Ex. G to Pl.'s MSJ, ECF No. 60-7). On July 19, 2011, Berberich recorded a foreclosure deed, stating that he purchased the Property for $4,297.00. (Foreclosure Deed, Ex. I to Pl.'s MSJ, ECF No. 60-9).

Plaintiff filed its Complaint on February 11, 2016, asserting several causes of action arising from the foreclosure and subsequent sale of the Property: (1) quiet title; (2) breach of NRS 116.1113; (3) wrongful foreclosure; and (4) injunctive relief. (*See* Compl. ¶¶ 29–82).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the

court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth; it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50

### III. DISCUSSION

Plaintiff moves for summary judgment on its quiet title and declaratory relief claims, asserting that *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), cert. denied, 137 S. Ct. 2296 (2017), compels the Court to hold that the foreclosure sale did not extinguish Plaintiff's DOT. (Pl.'s MSJ 6:13–13:22, ECF No. 60). Plaintiff alternatively argues that summary judgment is warranted because Plaintiff properly tendered the superpriority lien

to Sunrise prior to the foreclosure sale, thus eliminating the superpriority status of Sunrise's lien. (*Id.* 14:4–22:10).

Berberich responds that *Bourne Valley* is not controlling authority; and, even if it was, Plaintiff received actual notice of the Property's foreclosure sale, which prevents Plaintiff from relying on *Bourne Valley* here. (Berberich's Resp. 6:1–11:15, ECF No. 67). Berberich further argues that Plaintiff's purported tender did not satisfy Sunrise's superpriority lien on the Property; Plaintiff's tender contained impermissible conditions rendering it invalid; and Berberich obtained the Property as a bona fide purchaser. (*Id.* 11:17–18–23). Berberich also moves for summary judgment in his favor on those same grounds, in addition to the ground that the Property's foreclosure sale was not "wrongful" under Nevada law. (Berberich's MSJ 6:21–11:9, ECF No. 62).

The Court's below discussion begins with the applicability of *Bourne Valley* to this case.

### A. Constitutionality of the Foreclosure

In *Bourne Valley,* the Ninth Circuit held that NRS 116.3116's notice provisions violated lenders' due process rights because the scheme "shifted the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender." *Bourne Valley*, 832 F.3d at 1159. The Ninth Circuit, interpreting Nevada law, declined to embrace the appellant's argument that NRS 107.090, read into NRS 116.31168(1), mandates that homeowners' associations ("HOAs") provide notice to lenders even absent a request. *Id.* Accordingly, the absence of mandatory notice provisions rendered the statutory scheme facially unconstitutional. *Id.* at 1158–60.

*Bourne Valley*'s construction of Nevada law is "only binding in the absence of any subsequent indication from the [Nevada] courts that [the Ninth Circuit's] interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983). "[W]here the reasoning or theory of . . . prior circuit authority is clearly irreconcilable with the reasoning or

theory of intervening higher authority, [a court] should consider itself bound by the later controlling authority. . . ." *Miller v. Gammie*, 335 F.3d 889, 892–893 (9th Cir. 2003). "[A] [s]tate's highest court is the final judicial arbiter of the meaning of state statutes." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (citing *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975)); *see also Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret, and, where they see fit, to reinterpret the states' legislation.").

In *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, the Nevada Supreme Court expressly declined to follow *Bourne Valley* and held that NRS 107.090 is incorporated into NRS 116.31168, thus requiring that HOAs "provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." 422 P.3d 1248, 1253 (Nev. 2018) (en banc). The Nevada Supreme Court's holding is clearly irreconcilable with the Ninth Circuit's finding of unconstitutionality because the Ninth Circuit premised its conclusion on NRS Chapter 116's lack of mandatory notice provisions. Because the Nevada Supreme Court has since interpreted NRS Chapter 116 as mandating notice, the rationale underlying the *Bourne Valley* decision no longer finds support under Nevada law. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (recognizing that cases are "clearly irreconcilable" where the "relevant court of last resort ... undercut[s] the theory or reasoning underlying the prior circuit precedent."); *see e.g*, *Toghill v. Clarke*, 877 F.3d 547, 556–60 (4th Cir. 2017).

Because the Nevada Supreme Court has final say on the meaning of Nevada statutes, *Bourne Valley* is no longer controlling authority with respect to NRS 116.3116's notice provisions and, consequently, its finding of facial unconstitutionality. Accordingly, to the extent Plaintiff seeks to prevail based upon *Bourne Valley*, the Court rejects this theory.

**B. Tender of the Superpriority Portion of Sunrise's Lien**

Plaintiff claims that its tender of the superpriority amount of Sunrise's lien to A&K renders the foreclosure sale incapable of extinguishing Plaintiff's DOT. (Pl.'s MSJ 14:1–18:12, ECF No. 60). Conversely, Berberich argues that Plaintiff's tender was invalid because the letter accompanying the payment contained impermissible conditions, and that Plaintiff's tender did not include a reserve for other potential superpriority charges. (Berberich Resp. 11:18–13:1, ECF No. 67); (Supp. Brief 2:3–16, ECF No. 94).

Under NRS 116.3116, the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (Nev. 2014). "[A] first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (2018) (en banc). "[T]he superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments." *Id.* at 117. In addition to a full tender of the superpriority amount, "valid tender must be unconditional, or with conditions on which the tendering party has a right to insist." *Id.*

Here, the evidence indicates that on April 30, 2010, Miles Bauer, on behalf of Plaintiff, sent A&K a letter accompanied by a check for $288.00. (*See* Tender Letter, Ex. 4 to Miles Bauer Aff., ECF No. 60-8). Plaintiff calculated nine months of assessments to be $288.00 based on monthly assessments on the Property amounting to $32 per month, as identified in A&K's ledger on Borrower's delinquent payments. (*Id.*); (Account History Report, Ex. 3 to Miles Bauer Aff., ECF No. 60-8). The accounting ledger confirms Plaintiff's calculation of assessments, and Berberich does not satisfy his burden to specify additional amounts owed by Plaintiff under HOA's superpriority lien. *Celotex Corp.*, 477 U.S. at 324; (*See* Account History Report, Ex. 3 to Miles Bauer Aff., ECF No. 60-8). Thus, Plaintiff's tender of the $288.00

check to A&K covered the amount of Sunrise's superpriority lien, and A&K received the check before rejecting it. (*See* Tender Letter, Ex. 4 to Kendis Aff.); (Screenshot of Case Management Note, Ex. 2 to Miles Bauer Aff., ECF No. 60-8); (Voided Check, Ex. 5 to Miles Bauer Aff., ECF No. 60-8).

In sum, Sunrise and Berberich have failed to produce competing evidence showing that Plaintiff miscalculated the superpriority lien amount, specific unpaid nuisance and abatement charges covered by Sunrise's lien, or that Plaintiff never delivered the tender letter and accompanying check. The remaining question, therefore, is whether Plaintiff's tender was either unconditional or with conditions on which Plaintiff had the right to insist.

Plaintiff's Tender Letter, in relevant part, contains the following language:

> Our client has authorized us to make payment to you in the amount of $288.00 to satisfy its obligations to the HOA as a holder of the first deed of trust against the property. Thus, enclosed you will find a cashier's check made out to Alessi & Koenig, LLC in the sum of $288.00. This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that BAC's financial obligations towards the HOA in regards to the real property located at 2675 Upland Bluff Dr. have now been "paid in full."

(Tender Letter, Ex. 4 to Miles Bauer Aff., ECF No. 60-8).

Berberich argues that the tender language is impermissibly conditional because it does not limit the time or scope of Plaintiff's obligation to Sunrise. (*See* Berberich Resp. 11:18–13:1). Berberich asserts that acceptance of the check was improperly contingent upon agreement with the facts as stated in the letter, including Plaintiff's legal interpretation that the check's amount represented payment in full. (*Id.*).

At the outset, the Court notes that one of the purportedly improper paragraphs in the tender letter is identical to the letter the Nevada Supreme Court deemed unconditional and

otherwise valid.[2] Therefore, to the extent Berberich assigns impropriety to language in that paragraph, the argument necessarily fails. Specifically, with respect to the provision that an endorsement would be construed as acceptance of the letter's facts, the Court incorporates the reasoning of the Nevada Supreme Court and finds this language constitutes a condition on which Plaintiff had the right to insist. *Bank of Am., NA.*, 427 P.3d at 117.

Finally, the Court rejects Berberich's argument that Plaintiff needed to record its tender for the payment to properly remove the superpriority lien on the Property. (Berberich's Resp. 13:2–14:14). The Nevada Supreme Court has expressly rejected this argument. *See Bank of Am., N.A.*, 427 P.3d at 119–121.

### C. Berberich's Status as a Bona Fide Purchaser

Because Plaintiff tendered Sunrise's superpriority lien, Berberich cannot prevail even if the Court were to find he was a bona fide purchaser for value. "A foreclosure sale on a mortgage lien after valid tender satisfies that lien is void, as the lien is no longer in default." *See Bank of Am., N.A. v. SFR Invs. Pool 1*, LLC, 427 P.3d 113, 121 (2018) ("Because a trustee has no power to convey an interest in land securing a note or other obligation that is not in default, a purchaser at a foreclosure sale of that lien does not acquire title to that property interest."). Accordingly, in light of Plaintiff's tender, Berberich's status as a bona fide purchaser is immaterial.

Based upon the foregoing, the Court concludes that Plaintiff's tender satisfied Sunrise's superpriority lien; and thus, the foreclosure did not extinguish Plaintiff's DOT. While the sale

---

[2] The tender letter before the Nevada Supreme Court contained the following paragraph:

> This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [Bank of America]'s financial obligations towards the HOA in regards to the [property] have now been "paid in full."

*Bank of Am., NA.*, 427 P.3d at 118.

remains intact, Plaintiff's DOT continues to encumber the Property, and Berberich's interest is subject to this encumbrance. Accordingly, Plaintiff's Motion for Summary Judgment, as to its quiet title claim, is granted.

### D. Plaintiff's Wrongful Foreclosure and Injunctive Relief Claims

In its prayer for relief, Plaintiff requests primarily an order declaring that "Berberich purchased the property subject to [Plaintiff's] senior deed of trust." (*See* Compl. 15:14–16, ECF No. 1). The other relief requested—with the exception of injunctive relief—is phrased in the alternative.[3] (*See id.* 16:17–21). Therefore, because the Court grants summary judgment for Plaintiff on its quiet title claim, Plaintiff has received the relief it requested. The Court accordingly dismisses Plaintiff's wrongful foreclosure claim as moot. As to Plaintiff's request for a preliminary injunction pending a determination by the Court concerning the parties' respective rights and interests, the Court's grant of summary judgment for Plaintiff moots this claim, and it is therefore dismissed.

## IV. <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment, (ECF No. 60), is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that HOA's Motion for Summary Judgment, (ECF No. 61), is **DENIED as moot**.

---

[3] Pending before the Court is Berberich's Motion for Leave to File Supplemental Authority, (ECF No. 98). Berberich seeks to provide the Nevada Supreme Court's decision in *Nevada Association Services, Inc. v. Las Vegas Rental & Repair, LLC Series 78*, No. 73157, 2018 WL 6829004 (Dec. 27, 2018) (unpublished disposition). According to Berberich, that decision prohibits the Court from declaring that Plaintiff's DOT remains on his property because Plaintiff and Sunrise have already settled in this case, meaning Plaintiff already elected for its alternative remedies instead. (Mot. Leave 2:2–20, ECF No. 98). The Court's remedy here, however, differs from that which was prohibited in *Nevada Association Services*. Here the Court provides Plaintiff with one form of its requested relief: a declaration that its DOT remains. By contrast, in *Nevada Association Services* the lower court improperly concluded that the bank's deed of trust remained unaffected on the property, yet still awarded the bank's alternatively requested relief of damages resulting from its deed of trust being extinguished. *Id.* at *2. Thus, *Nevada Association Services* does not prevent the Court from allowing certain parties to settle, while later ordering one form of relief based remaining claims with another party. The Court therefore denies Berberich's Motion for Leave to File Supplemental Authority.

**IT IS FURTHER ORDERED** that Berberich's Motion for Summary Judgment, (ECF No. 62), is **DENIED**.

**IT IS FURTHER ORDERED** that Berberich's Motion for Leave to file Supplemental Authorities, (ECF No. 98), is **DENIED**.

The Clerk of Court shall enter judgment accordingly and close the case.

**DATED** this __29__ day of March, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court